UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA R.G.,

                              Plaintiff,

v.                                                      CASE NO. 1:24-cv-571 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 10, 15), as well as Plaintiff's Reply (Doc. 18). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 10) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. 15) is **DENIED**, and the decision of the Commissioner is **REMANDED**.

**I.    RELEVANT BACKGROUND**

    **A.    Procedural Background**

On April 19, 2021, Plaintiff protectively filed an application for supplemental security income with an initial alleged disability onset date of September 15, 2020. (Tr. 103-04.) The alleged disability onset date was amended at the hearing to match the

application filing date.  (Tr. 41.)  The application was denied initially on August 16, 2021 and upon reconsideration on April 21, 2022.  (Tr. 102, 114.)  Plaintiff then timely requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 159.)  On June 16, 2023, following the hearing, ALJ Anthony Dziepak issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 15-35.)  The Appeals Council denied the request for review, (Tr. 1-7), and Plaintiff timely appealed to federal district court.

### B.     Factual Background[1]

Plaintiff was born on June 1, 1974, (Tr. 104), and graduated high school and attended one year of college, (Tr. 253).  Plaintiff alleged several severe impairments in support of her disability claim, including stage four liver disease and a rare blood disorder, as well as certain psychiatric limitations including anxiety and depression.  (Tr. 104, 123.)

Plaintiff testified she was admitted to the hospital in September 2020 for three to four weeks due to issues with her liver as a result of chronic alcohol use.  (Tr. 49-50.)  From that point on, Plaintiff has remained sober and moved to New York to be closer to family.  (*Id.*)

The ALJ questioned Plaintiff about her symptoms on a daily basis but asked her to focus on the years after her hospitalization in 2020 and before her hospitalization in late 2022 for abdominal issues.  (Tr. 52-53.)  Plaintiff described that she experienced depression and anxiety even before she was hospitalized.  (Tr. 53.)  She explained that she struggled with maintaining friends, which would generally increase her depression.  (Tr. 55-56.)  The ALJ asked about certain notation entries in her mental health records that reflected she took trips with her significant other to LA and Hawaii.  (Tr. 56.)  Plaintiff

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

2

explained that she was anxious around the crowds. (Tr. 57.) She also travelled to Egypt but similarly explained that it was "awful" due to the anxiety and stress. (Tr. 64.) She explained that she told her therapist it was "rewarding" and that she enjoyed it due to the "spiritual part of being on those ruins" and what she learned. (Tr. 64-65.)

The ALJ asked Plaintiff about medications she was taking for her mental health issues, and she explained she was not taking any because, during therapy years ago, she felt her therapist was pushing drugs, and she ultimately became suicidal. (Tr. 58-59.) Similarly, she had friends who took medication for mental health issues who eventually committed suicide. (Tr. 59.) The ALJ acknowledged those concerns but encouraged Plaintiff to explore medication therapy with her providers, noting that "inevitably medication and therapy together are the recipe for people getting better." (Tr. 59-61.)

Next, Plaintiff discussed the issues she experienced with her hands, noting that she did not have surgery as originally scheduled, indicating she was not cleared for surgery.[2] (Tr. 62.) She explained that she is unable to do anything with her hands for more than thirty minutes before they lock up and cause significant pain, rendering her unable to use them to any extent until the next day. (Tr. 62-63.) She noted that she has been diagnosed with cubital tunnel syndrome. (Tr. 63.)

Plaintiff also described that she experienced pain that radiated from her abdomen down her legs. (Tr. 65.) She explained that when she looks down, she feels a "shock" down to her toes, causing her to sit down and wait for it to pass. (*Id.*) She does not take the prescribed pain medication all the time because of concern for her liver. (*Id.*) She

---

[2] The Court recognizes that the record reflects she asked that the surgery be postponed due to mental stress, as recognized by the ALJ in his decision. (Tr. 27.)

explained that her abdomen has been swelling, and she has been diagnosed with lupus and hepatic encephalopathy, which causes her to forget things and lose her train of thought. (Tr. 66.)

Plaintiff described that she has fatigue, causing her to want to go to bed after just a few hours of being awake. (Tr. 67.) Plaintiff's counsel then asked Plaintiff how often she thought she would have to miss work, if she had a full-time job. (*Id.*) The ALJ instructed Plaintiff to limit her testimony to before the hospitalization in December 2022 "where I think admittedly things have taken a turn for the worst and you haven't returned back to whatever it is that you were dealing with before that." (*Id.*) Plaintiff responded that she would not be reliable at all because she would be unable to sit anywhere for that period of time and function. (Tr. 68.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant has not engaged in substantial gainful activity since April 19, 2021, the application date (20 CFR 416.971 *et seq.*). (Tr. 20.)

2. The claimant has the following severe impairments: chronic liver disease/cirrhosis and alcohol use disorder in sustained remission; bilateral upper extremity cubital and carpal tunnel syndrome; and hemolytic anemia (20 CFR 416.920(c)). (Tr. 20.)

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 24.)

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and carry 20 occasionally and 10 pounds frequently. She can sit 6 hours in an 8-hour workday and stand and walk 6 hours in an 8-hour workday. She can occasionally climb, balance,

stoop, kneel, crouch and crawl, and no working around unprotected heights or heavy moving machinery. She is limited to frequent handling and fingering. She is limited to simple work tasks with occasional interaction with others, and she is able to make simple work-related decisions and adapt to simple changes in routine work setting. (Tr. 24.)

5. The claimant is unable to perform any past relevant work (20 CFR 416.965). (Tr. 28.)

6. The claimant was born on June 1, 1974 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963.) (Tr. 28.)

7. The claimant has at least a high school education (20 CFR 416.964). (Tr. 28.)

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 28.)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). (Tr. 28.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also

include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B. Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the

claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

III.    ANALYSIS

Plaintiff makes three arguments in support of remand. First, Plaintiff contends that her chronic liver disease satisfied Listing 5.05(G). (Doc. 10-1 at 17.) Second, Plaintiff argues that the ALJ's RFC was not consistent with the hypothetical presented to the vocational expert, and so the vocational expert's testimony could not serve as substantial evidence for his step five finding. (*See id.* at 18.) Finally, Plaintiff maintains that the ALJ's specific RFC determination regarding handling and fingering was not based on substantial record evidence, but rather on his own lay interpretation of the record evidence. (*See id.* at 21.)

Having carefully considered the record and the pertinent law, the Court finds that remand is appropriate based on Plaintiff's second argument. Accordingly, the Court will not reach the merits of Plaintiff's other arguments. However, the Court has recognized certain troubling issues, set forth below, which should be avoided on remand.

A.    **The ALJ Erred in His Step Five Analysis.**

The law is settled that a vocational expert is not necessary in all cases, but "testimony of vocational experts is utilized when a claimant is not able to perform all of the requirements for a particular exertional level, in order to determine whether there are jobs the claimant can perform with those additional limitations." *Melisa G. v. Berryhill*, No.

3:18-CV-508 (DJS), 2019 WL 2502726, at *4 (N.D.N.Y. June 17, 2019) (citing *Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010)).  Moreover, in all cases where an ALJ does invoke the expertise of a vocational expert, the hypothetical presented "must precisely and comprehensively set out every physical and mental impairment of the Plaintiff that the ALJ accepts as true and significant."  *Riley v. Astrue*, No. 11-CV-6512T, 2012 WL 5420451, at *8 (W.D.N.Y. Nov. 6, 2012).  "If hypothetical questions do not include all of a claimant's impairments, limitations and restrictions, or are otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled."  *Chaderick G. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00258-GRJ, 2024 WL 4767031, at *6 (S.D.N.Y. Nov. 13, 2024) (quoting *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12-cv-1631 (MAD), 2014 WL 420465, at *10 (N.D.N.Y. Feb. 4, 2014)).  In sum, "[t]he RFC findings contained in the decision must match the hypothetical posed to the expert."  *Owens v. Astrue*, No. 5:06-CV-0736 (NAM/GHL), 2009 WL 3698418, at *8 (N.D.N.Y. Nov. 3, 2009); *see also Ball v. Astrue*, 755 F. Supp. 2d 452, 466 (W.D.N.Y 2010) ("Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'")

During the hearing, the ALJ presented the vocational expert with one hypothetical, before questioning Plaintiff:

> And if I had a younger individual with a high school education with the waitress position and they were limited to the following -- if you can give me some examples of both light jobs and then sedentary jobs, assuming that at the end of the hypothetical I further reduce it to sedentary, I would appreciate it. So, for the first hypothetical, the lifting and carrying is 20 pounds occasionally, 10 frequently, sitting a six out of eight hours, standing and walking six out of eight hours. In terms of postural movements, will have occasional across the board, so occasional climbing, kneeling, stooping, balancing, and crawling. Environmentally, no working around unprotected heights or heavy, moving machinery like a forklift.

> Mentally, simple work tasks, occasional interaction with others, able to make simple, work-related decisions as well as adapt to simple changes in routine at work. So, for the first hypothetical, give me three examples of light jobs with national numbers and then assume I further decrease it to sedentary, if you can give me three alternatives to sedentary.

(Tr. 44.)  In response, the vocational expert identified several jobs a hypothetical individual with the described limitations could perform.  (Tr. 44-45.)

In his decision, the ALJ's RFC mirrored the hypothetical posed to the vocational expert **except** that he added a manipulative limitation: he limited Plaintiff to frequent handling and fingering.  (*See* Tr. 24.)  Thus, the ultimate RFC finding plainly does not match the hypothetical presented to the vocational expert.[3]  This was error because the hypothetical does not accurately reflect the limitations ultimately assigned by the ALJ. *See Johnny P. v. Comm'r of Soc. Sec.*, No. 6:20-CV-7082SR, 2023 WL 2726375, at *5 (W.D.N.Y. Mar. 31, 2023) ("A vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job.") (quoting *Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996)).

Defendant seeks to avoid this conclusion by arguing, as the ALJ concluded, that added limitations do not impact the jobs otherwise identified by the vocational expert. (*See* Doc. 15-1 at 7-8); (Tr. 29).  But therein lies the problem:  the Court cannot conclude that these jobs remain suitable when the vocational expert did not opine as much and the vocational expert did not have a clear picture of Plaintiff's limitations.  The law is clear on

---

[3] The Court notes that Plaintiff's counsel did ask the vocational expert about a limitation in which Plaintiff could only finger, feel, or handle occasionally.  (Tr. 44.)  The vocational expert responded that would eliminate all work.  (*See id.*)  Plaintiff's counsel, though, did not inquire, nor did the vocational expert opine, as to any limitations involving frequent fingering, feeling, or handling.

9

this point: "[i]f hypothetical questions do not include all of a claimant's impairments, limitations and restrictions, or are otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled." *Chaderick G.*, 2024 WL 4767031, at *6.

And it is not sufficient for the ALJ to simply read the Dictionary of Occupational Titles (DOT) and conclude that his additional limitations do not affect the suitability of the jobs when he has no expert experience in the vocational arena. Indeed, the DOT is a well-respected source of vocational information, but it does not always reflect the realities of the jobs in the market with recent technological advances that may alter the suitability of certain jobs, which is why ***a vocational expert's*** testimony may be based on the DOT as well as his or her experience. *See Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 449–50 (S.D.N.Y. 2004) (recognizing that "the Commissioner ***must*** introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform" when reliance on the grids is inappropriate and further noting that "the ***expert*** can rely on information available from governmental and other publications, such as the DOT.") (emphasis added) (internal citations and quotations omitted).  Indeed, "[t]he sufficiency of testimony of a vocational expert, used to satisfy the Commissioner's burden at step five of the disability calculus, hinges entirely upon a proper RFC finding, and the posing of questions to the vocational expert detailing all limitations discerned." *Aull v. Astrue*, No. 05-CV-1196 LEK/DEP, 2008 WL 2705520, at *17 (N.D.N.Y. July 10, 2008)

Accordingly, because the ALJ's hypothetical did not mirror the restrictions ultimately assigned in his RFC finding, his step five finding is not supported by substantial evidence. Remand is thus appropriate.

### B.     Other Areas of Concern

As noted above, because the Court has concluded remand is appropriate on the above issue, it will not reach the remaining issues raised by Plaintiff. However, the Court identifies the following issues to be avoided on remand.

The Court notes that certain findings made by the ALJ on the record contradict findings made later in his decision. At the conclusion of the hearing, the ALJ appeared to award Plaintiff benefits: "[s]o, you know, I think more recently things have taken a turn for the worst, a combination of mental with the physical issues that you're dealing with, and I think the combination of them are making things a little bit too overwhelming, ***so I think at this point I'm going to be able to pay you benefits***, I just have to figure out how far back I'm going to go." (Tr. 69) (emphasis added). The ALJ then indicated that he intended to put a "one year review" on the file for follow up, and then stated "***so at least you know that at this point when you leave here today, you're going to get put on benefits*** and it's just a question of how far back going to April of 2021 do I feel that your medical records are sufficient to document, you know, whatever it is that you've been going through, physical and mental." (*See id.*) (emphasis added). Despite these statements, the ALJ issued an unfavorable decision, finding Plaintiff not to be disabled. These findings are plainly contradictory and most troubling.

Also concerning is that the above statements seemed to be based on the ALJ's finding that Plaintiff "took a turn" at the end of 2022 when she was hospitalized, which

caused him to limit Plaintiff's testimony and Plaintiff's counsel's questioning during the hearing, to before Plaintiff's hospitalization in December 2022.  (Tr. 52-53) ("if we just think about the last two years prior to this most recent hospitalization, what physically were you dealing with in terms of symptoms that you think makes the idea of holding down any job would be too difficult").  Indeed, after Plaintiff's counsel questioned Plaintiff about her symptoms and abilities, the ALJ interrupted and limited the time period of questioning.  (*See* Tr. 67) ("Let's talk about it before the hospitalization in December where I think admittedly things have taken a turn for the worst and you haven't returned back to whatever it is that you were dealing with before that. So, before the hospitalization, same question. If you were asked to go into a job five days a week, how many days do you think you'd have trouble?").  He further clarified that he wanted the answer to focus between the two hospitalizations in the record.  (*See id.*)  Yet, in his decision, he addressed the December 2022 hospitalization quite differently, finding that "[t]he December 2022 hospitalization is not expected to reflect material change in symptoms to last 12 consecutive months."  (Tr. 27.)

Again, these findings are contradictory.  Moreover, the Court is perplexed as to the evidence on which the ALJ's conclusion is based, as the records do not appear to identify a determinable cause for Plaintiff's hospitalization, and while certain records reflect that Plaintiff was feeling better and had lessened pain, the ALJ did not accept testimony as to Plaintiff's condition following her hospitalization and certain records reflected pain and abnormal objective results.  (*See* Tr. 1056) (recognizing uncertainty as to the etiology leading to hospitalization); (Tr. 1081) (reflecting pain as of mid-January 2023).  While the Court acknowledges the deference owed to the ALJ's resolution of conflicting evidence,

the above conclusory statement, conflicting findings, and incomplete testimony does not allow the Court to evaluate the ALJ's reasoning, and it cannot reconcile the ALJ's wholly opposite conclusions found in his decision with those conclusions recited during the hearing.  And in light of the ALJ's limitations to Plaintiff's testimony regarding her symptoms, and the fact that the medical records reflect continued questions regarding her condition, additional record development around this issue is necessary for full resolution of this issue.

Further, the Court notes that the ALJ included certain mental restrictions in his RFC, specifically limiting Plaintiff to "simple work tasks with occasional interaction with others, and she is able to make simple work-related decisions and adapt to simple changes in routine work setting." (*See* Tr. 24.)  Yet, the ALJ found that Plaintiff had no limitations in any of the paragraph B categories, except for adapting or managing oneself, in which he assigned a "mild limitation." (Tr. 22.)  Indeed, in evaluating the opinion of Dr. Ransom, who found no limitations from Plaintiff's mental impairments, the ALJ found her opinion to have "some persuasiveness" but then concluded that the "adoption of restrictions is proactive to avoid potential exacerbation of otherwise non-severe conditions." (Tr. 23.)  The agency reviewers similarly found no limitations (but for a mild limitation on adapting or managing oneself), which the ALJ found to have some persuasiveness, but then noted that he found "the record supporting limitation to simple work with occasional interaction to minimize potential exacerbation of otherwise non-severe baseline mental symptoms as noted in the treatment record." (Tr. 23.)  In light of the clearly established law that an RFC is the most a claimant can do, and must be supported by substantial evidence in the record, *see* 20 C.F.R. §§ 404.1520(e),

404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996), a clear explanation between the any restrictions in the RFC and evidence supporting actual, not potential future, limitations is necessary on remand.[4]

Finally, Plaintiff raised an issue regarding the ALJ's evaluation of Listing 5.05, which addresses chronic liver disease. (*See* Doc. 10-1 at 17.) Specifically, Plaintiff argued that she satisfied the Listing under subsection (G). (*See id.*) Defendant's rebuttal was simply that the evidence relied upon by Plaintiff was outside the relevant time period, because the evidence alleged to meet the Listing predated the amended alleged disability onset date.[5] (*See* Doc. 15-1 at 4-6). Defendant did not argue that Plaintiff failed to substantively satisfy Listing 5.05(G). (*See id.*) Again, the Court need not evaluate Plaintiff's argument in light of the remand, but it does note that the ALJ expressly analyzed only Listing 5.05(B) in his decision, with no mention of Listing 5.05(G). Thorough consideration of all subsections of Listing 5.05 would be prudent upon remand, given the stage four nature of Plaintiff's condition.

---

[4] The Court notes that, generally, a more restrictive RFC is not concerning to a plaintiff. But the concern here is not that the RFC was more restrictive as a result of the ALJ's resolution of conflicting evidence but rather his express statement that he was imposing more restrictive limitations than supported by the record to prevent an anticipated decline.

[5] The Court notes that the alleged disability onset date was amended at the hearing "since this is a Title XVI [claim]." (Tr. 41.) The ALJ then explained to Plaintiff "[a]nd what that means. . . is the type of application that you filed, even if I find that your disability goes back before your physical filing date, you can't actually get benefits earlier than your filing date, so just know that when we amend the onset date, we're doing it just for efficiency purposes." (*Id.*) Given Defendant's argument pertaining to Listing 5.05(G) was entirely based on timing, the amendment of the alleged onset date appears to affect the substance and viability of certain arguments, and was not just for "efficiency purposes."

## IV. CONCLUSION

For the above reasons, remand is warranted.

**ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 15) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** for further proceedings, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: March 5, 2026　　　　　　　　　　　　　　　J. Gregory Wehrman
Rochester, New York　　　　　　　　　　　　　　　HON. J. Gregory Wehrman
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge